# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN WALKER, *et al.*, | * | |
| Plaintiffs/Appellants, | * | |
| v. | * | Civil Action No. AW-06-62 |
| NANCY SPENCER GRIGSBY, | * | |
| Appellee. | * | |
| | ***** | |

## MEMORANDUM OPINION

This appeal arises from an Order of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), limiting the fee application of Debtors' attorney, Jordan and Tell ("Appellant" or "Jordan and Tell"). Currently pending before the Court is Appellee's Motion to Dismiss [6]. Because this Court has reviewed the entire record and has carefully examined the parties' submissions, "the decisional process would not be significantly aided by oral argument." BANKR. R. 8012 (2005). For the reasons that follow, the Court will dismiss this action as equitably moot.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are undisputed. John and Suzanne Walker (the "Debtors" or the "Walkers") filed a joint application for Chapter 13 bankruptcy protection on November 21, 2003. At the time they filed for bankruptcy, the Walkers were 40 months in arrears on their residential mortgage, held by GreenPoint Mortgage Funding, Inc. ("GreenPoint").

In July of 2004, GreenPoint initiated an adversary proceeding in the Chapter 13 action, seeking a declaration as to the secured status of its claim. After much litigation and protracted discovery, GreenPoint and the Debtors resolved GreenPoint's claim and entered into a settlement

agreement (the "Settlement Agreement") on June 14, 2005. By order, the Bankruptcy Court incorporated the terms of the Settlement Agreement, on July 22, 2005, including the following language:

> ORDERED, that, should any excess or additional funds become available to the Debtors, they shall be paid to GreenPoint on account of the legal fees and expenses that remain owed.

In the interim, the Debtors filed a motion to refinance, which the Bankruptcy Court approved on June 6, 2005. The order approving the proposed refinancing of the property provided that "all proceeds of the refinancing, after payment of costs of closing, and all debt secured by present liens upon the property, shall be transmitted by the settlement officer to the Chapter 13 Trustee to the extent necessary to pay off all allowed claims, together with a copy of the fully executed settlement sheet (HUD-1)."

On June 15, 2005, the Debtors' counsel, Jordan and Tell, filed an application for compensation under Section 330 of the Bankruptcy Code, seeking compensation in the amount of $10,668 for services rendered from commencement of the adversary action involving GreenPoint through May 15, 2005. The Bankruptcy Court approved this application in full on October 5, 2005.

Subsequently, the Bankruptcy Court confirmed the Debtors' Third Amended Plan, on October 13, 2005, conditioning its approval on, among other things, the parties' representations that pursuant to the Settlement Agreement the Trustee had the authority to transmit any excess funds to GreenPoint.

Between the time that the Bankruptcy Court confirmed the Debtors's reorganization plan and its first fee application, the Debtors allege that Jordan and Tell provided additional services in order to consummate the settlement and close the bankruptcy case. In an effort to receive compensation

for these services, Jordan and Tell filed its second and final application for compensation in the amount of $3,475 on October 5, 2005. The trustee of the bankruptcy estate, Nancy Spencer Grigsby, ( the "Trustee") filed an objection to Jordan and Tell's final application on October 7, 2005.

After a hearing on the final application, on December 14, 2005, Judge Alquist granted the application in part, allowing Debtor's Counsel to receive $950 from the bankruptcy estate rather than the $3,475 requested. Debtors filed a timely appeal of this order on January 9, 2006.

On February 8, 2006, the Trustee moved to dismiss this appeal, on the grounds that this case has become moot because, on December 31, 2005, she disbursed all the remaining funds in the bankruptcy estate pursuant to the terms of the Debtors' Third Amended Plan.

## **STANDARD OF REVIEW**

A district court, sitting as an appellate court in bankruptcy, reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013;[1] *see also First Nat'l Bank of Md. v. Stanley* (In re Stanley), 66 F.3d 664, 667 (4th Cir. 1995).

## **DISCUSSION**

As a threshold matter, a court may dismiss a bankruptcy appeal if it appears that the case has become either constitutionally or equitably moot. A finding of constitutional mootness reflects a determination that a case or controversy no longer exists within the meaning of Article III. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide

---

[1] Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in relevant part:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013.

moot cases because their constitutional authority extends only to actual cases and controversies."). The Supreme Court has set a high standard for determining mootness under Article III. To dismiss a case due to constitutional mootness, a court must find that events have occurred that make it impossible to grant any effectual relief. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992); *Mills v. Green,* 159 U.S. 651, 653 (1895). Thus, a case is rendered constitutionally moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277 (2000) (internal citation omitted). A party seeking to argue that the case has not become moot must show that it has suffered an actual injury, capable of being redressed by a favorable judicial decision. *See Iron Arrow Honor Society*, 464 U.S. at 70; *see also In re Foreman*, 278 B.R. 92, 94 (D. Md. 2002). To meet the requirements of Article III, the available remedy need not be fully satisfactory to avoid mootness. *Calderon v. Moore*, 518 U.S. 149, 150 (1996). Rather, the availability of a partial remedy suffices to prevent a case from being deemed moot. *Id.*

Appellant contends that this case remains a "live" case within the meaning of Article III because the court may fashion some relief, despite the fact that the Trustee has disbursed the bankruptcy estate. This Court must agree. It remains possible for the Court to grant some effectual relief. If this Court issued an order, granting Appellant the requested relief, Jordan and Tell could attempt to collect this amount from the Debtors, Appellee, or a third party. Furthermore, that Appellant seeks monetary compensation, as opposed to some other form of relief, counsels against a determination of constitutional mootness. If this Court were to reverse the Bankruptcy Court's order, the Bankruptcy Court could order GreenPoint to return a portion of its attorney's fees to satisfy any award of Jordan and Tell. The facts of the present case differ from those in *McLean*

*Square Associates v. J.W. Fortune, Inc.*, 200 B.R. 128 (E.D. Va. 1996), a decision upon which Appellee relies. This case does not involve the transfer of something non-fungible, such as a property. Nor does this appeal involve a situation where no outcome could return the parties to *status quo ante*. *Id.* at 133; *see also In re Dahlquist,* 751 F.2d 295, 298-99 (7th Cir. 1985) (finding that a dispute over an award of interim compensation was not constitutionally moot and did not present a situation in which failure to obtain a stay rendered it impossible to fashion effective relief). Because Appellant could succeed in obtaining partial relief, this case has not become constitutionally moot.

Short of constitutional mootness, numerous of doctrines of justiciability permit a court to decline to exercise jurisdiction over a matter, including the doctrine of equitable mootness. In contrast to Article III mootness, the doctrine of equitable mootness derives not from the Constitution, but from prudential concerns. Because the doctrine of equitable mootness relates to the court's discretion in matters of remedy and judicial administration, a court may make a finding of equitable mootness even though the case is not constitutionally moot. *See, e.g.*, *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 95 (4th Cir. 1988) (affirming district court's dismissal of bankruptcy appeal based on the doctrine of equitable mootness); *Chamber of Commerce v. United States Dep't of Energy,* 627 F.2d 289, 291 (D.C. Cir. 1980) (explaining the distinction between equitable mootness and Article III mootness).

At root, "[t]he doctrine of equitable mootness represents a pragmatic recognition by courts that reviewing a judgment may, after time has passed and the judgment has been implemented, prove 'impractical, imprudent, and therefore inequitable.'" *In re US Airways Group, Inc.*, 369 F.3d 806, 809 (4th Cir. 2004) (quoting *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir.

2002)). The Fourth Circuit has identified several factors that a court must consider when determining whether the doctrine of equitable mootness should apply to the case at bar, including:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel Co.*, 283 F.3d at 625.

Weighing these four factors, the balance tips decidedly in favor of finding that this case is equitably moot. Appellant does not dispute that it neither sought nor obtained a stay of the Bankruptcy Court's order of October 13, 2005, which confirmed the Debtors' Third Amended Chapter 13 Plan. Furthermore, all parties agree that the Trustee acted pursuant to the October 13, 2005 order when she transmitted the excess funds in the bankruptcy estate to GreenPoint. Appellant has not articulated a cogent argument for its failure to seek a stay of the October 13, 2005 bankruptcy order, but instead offers the following explanation:

> Appellee argues that this appeal is moot because Appellants did not seek a stay of the Order or of the bankruptcy court's order confirming Appellants' Chapter 13 Plan. But there was no reason to seek a stay of the Order to prevent Appellee from distributing estate funds as the bankruptcy court expressly stated that the Order [on attorney's fees] did not address the distribution of estate funds. . .. [I]t would have made no sense for Appellants to appeal and seek a stay of the confirmation order as it was Appellants who proposed the Chapter 13 Plan and asked the bankruptcy court to approve it. Litigants do not usually seek a stay of an order granting them the relief they request.

Although Appellant essentially claims that it was not aware that the Trustee would distribute the remaining funds in the estate, it explicitly acknowledges that it did not seek a stay of the confirmation order. The Bankruptcy Court previously approved of the terms of the Settlement

Agreement, which expressly provided that

> should any excess or additional funds become available to the Debtors, they shall be paid to GreenPoint on account of the legal fees and expenses that remain owed.

Based on this plain language, this Court finds that Debtors were on notice that they needed a stay to prevent the disbursement of any excess funds to GreenPoint.

That the bankruptcy reorganization plan has substantially been consummated also militates in favor or a finding of equitable mootness.  Here, the plan and all bankruptcy estate disbursements have been completed.

The third factor, the extent to which the relief requested would affect the success of the reorganization plan, is equivocal at best.  The Trustee argues that retaining jurisdiction over the appeal would have a chilling effect on the Trustee and would hamper her ability to expeditiously carry out her duties.  In addition, the Trustee contends that this case "raises concerns regarding the finality of settlement agreements whose terms are incorporated into the fabric of the confirmed chapter 13 plan and where disbursements have been made pursuant thereto." *See* Tr. Br. to Dismiss at 13.  The Court does not harbor these same fears.  This appeal relates to a relatively small part of the entire bankruptcy estate, and absent additional evidence, this Court cannot say as a matter of law that granting the relief sought would jeopardize the Debtors' reorganization plan.

This Court, however, does conclude that the fourth factor favors maintaining the status quo.  To revise the Bankruptcy Court's order on attorney's fees would affect the rights of at least one third party, GreenPoint.

Furthermore, Appellant's reliance on *Evergreen Int'l Airlines, Inc., Oxford Title Ins. Co v. Tucson Self Storage, Inc.* (*In re Tucson Self-Storage, Inc.*) , 166 B.R. 892 (B.A.P. 9th Cir. 1994),

and *Credit Alliance Corp. v. Dunning-Ray Insurance Agency, Inc.* (*In re Blumer*), 66 B.R. 109 (B.A.P. 9th Cir. 1986), appears misplaced. Both cases come from the Ninth Circuit Bankruptcy Appellate Panel and do not serve as precedent in this Circuit. In addition, the *Tucson Self-Storage* case related to a stream of payments, not a single payment. In those circumstances, the Ninth Circuit Bankruptcy Appellate panel found that it could provide the appellant effective relief, in part, because the amount of future plan payments could be adjusted prospectively in order to arrive at the settled amount. *In re Tucson Self-Storage, Inc.*, 188 B.R. at 896. Unlike in the present case, the reorganization plan in *Tucson Self-Storage* had not been fully consummated.

Similarly, *In re Blumer* is inapposite to the case at bar. In the case of *In re Blumer*, the Ninth Circuit ruled that the bankruptcy appeal had not become equitably moot because the court was able to structure effective relief. This holding, however, was predicated on the fact that the company that had received the funds in question was also a party to the appeal. *See In re Blumer*, 66 B.R. at 113. Where, as here, the requested relief would affect a third party, the holding of *In re Blumer* is simply inapplicable.

In sum, a majority of the factors enumerated by the Fourth Circuit support a finding of equitable mootness. "Some controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court. This is particularly true when a party, seeking a return to the *status quo ante*, sits idly by and permits intervening events to extinguish old rights and create new ones." *Central States*, 841 F.2d at 93. Such is the case here, and this Court finds that it would be inequitable to exercise jurisdiction over Appellant's appeal. As such, this Court will dismiss this appeal as moot.

## **CONCLUSION**

Therefore, for the foregoing reasons, the Appellee's Motion to Dismiss is GRANTED. An Order consistent with this Opinion will follow.

<u>April 11, 2006</u>                              <u>            /s/            </u>
Date                                               Alexander Williams, Jr.
                                                   United States District Judge